**This order is SIGNED.**

**Dated: November 9, 2016**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| In re:<br><br>CASTLE SERVICE, LLC,<br><br><br><br>Debtor. | Bankruptcy Number: 16-26302<br><br>Chapter 11<br><br>Hon. Kevin R. Anderson |
|---|---|

### MEMORANDUM DECISION

For more than fifteen years, the Debtor, Castle Service, LLC, has operated an automobile service business on real property titled in the name of two of its owners and managers, Michael and Judy Hurdsman (the "Hurdsmans"). ZB, N.A. d/b/a Zions Bank ("Zions") holds a trust deed on real property located in Huntington, Utah to secure a 2001 construction loan in the present amount of approximately $331,000. Zions has filed a motion for relief from stay asserting that because the real property is not titled in the Debtor's name, it is not property of the bankruptcy estate. In the alternative, Zions argues that it is entitled to relief from the stay for cause. As explained below, the Court finds that the real property is an asset of the estate under 11 U.S.C. § 541,[1] and thus is subject to the automatic stay of § 362. The Court further finds that Zions has

---

[1] Unless otherwise specified, all subsequent chapter and section references herein are to title 11 of the United States Code.

not established sufficient cause at this point in the case to grant relief from the automatic stay. Therefore, the motion is denied.

## I. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 1334. The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (b)(2)(G). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTS

In 2000, the Hurdsmans acquired real property at 65 South Main, Huntington, Utah 84528 (the "Castle Service Property").[2] At all relevant times, the Castle Service Property has been titled in the individual names of Michael and Judy Hurdsman as joint tenants.[3] On November 1, 2000, Michael Hurdsman executed a note in favor of Zions in the principal amount of $500,000 (the "Note").[4] The Note lists the borrower as "Michael Hurdsman dba: Castle Services 65 South Main Huntington, UT 84528."[5] A few days thereafter, the Hurdsmans signed and recorded a "Construction Deed of Trust" on the Castle Service Property to secure the Note.[6] Ostensibly, the loan proceeds were used to construct the buildings and improvements on the Castle Service Property relating to the Debtor's automobile service business.[7]

The Debtor, Castle Service, LLC, was formed in March of 2001 with Michael and Judy Hurdsman jointly owning a 50% interest and Darrin and Ethan Hurdsman each owning a 25%

---

[2] Zions Exh. F.

[3] Zions Exh. A, D, F; Stipulation of Facts, Docket No. 25, ¶ 8. Unless otherwise noted, all subsequent references to the docket are to the Debtor's Chapter 11 bankruptcy case, Case No. 16-26302.

[4] Zions Exh. A.

[5] *Id.*

[6] Zions Exh. B.

[7] 09/12/2016 Hearing Transcript at 2:34:59 p.m. to 2:35:17 p.m.

interest.[8] Since its formation, the Debtor has operated an automobile service business on the Castle Service Property that includes maintenance and repair, tires, towing, car wash bays, etc.[9] The Castle Service Property is the Debtor's sole business location.[10]

On May 30, 2001, Castle Service, LLC executed a replacement note with the Small Business Administration in the amount of $515,000 with Zions listed as the lender (the "SBA Note").[11] The SBA Note was signed by the Hurdsmans as managers of Castle Service, LLC.[12] On this same date, the Hurdsmans, in their individual capacity, also executed a "Modification of Deed of Trust" that increased the principal balance of the secured loan from $500,000 to $515,000 (the "SBA Trust Deed").[13] Also on this same date, Michael and Judy Hurdsman, in their individual capacity, signed a guarantee of the SBA Note (the "Personal Guarantee").[14]

While the Debtor has continually possessed and operated its business activities out of the Castle Service Property, there has never been a written lease between the Hurdsmans and the Debtor, and there is no evidence that the Debtor has ever paid the Hurdsmans for its use of the Castle Service Property.[15] However, it was not contested at the hearing that all payments on the SBA Note were made by the Debtor and not the Hurdsmans.[16]

---

[8] List of Equity Security Holders, Docket No. 15.

[9] Stipulation of Facts, Docket No. 25, ¶ 9.

[10] Schedule A/B, Docket No. 15.

[11] Zions Exh. C.

[12] *Id.*

[13] Zions Exh. D.

[14] Zions Exh. E.

[15] Stipulation of Facts, Docket No. 25, ¶ 10.

[16] 09/12/2016 Hearing Transcript at 2:26:34 p.m. to 2:26:38 p.m.

On July 19, 2016, Castle Service, LLC filed for Chapter 11 bankruptcy.[17] Zions is now seeking relief from stay to conduct a trustee's sale of the Castle Service Property under the SBA Note and SBA Trust Deed. Zions argues that it is entitled to relief from stay because the Castle Service Property is not titled in the Debtor's name and thus is not property of the estate under § 541. In the alternative, Zions seeks relief from stay for cause under § 362(d)(1). In response, the Debtor asserts that because it holds both a possessory and/or equitable interest in the Castle Service Property, it is property of the bankruptcy estate. The Debtor further asserts that Zions is adequately protected and that the Castle Service Property is essential to its plan of reorganization.

Zions has not filed a proof of claim in this case, but Debtor's Schedule D lists the trust deed debt at $331,422.96 with the Castle Service Property having a value of $470,000.[18] Schedule D also lists a tax lien against the Castle Service Property in the amount of $10,214.07.[19] Based on the absence of other evidence, the Court will use the amounts on Schedule D and find for purposes of this motion that there is an equity cushion of approximately $128,000 to cover the SBA Trust Deed.

### III.    DISCUSSION

The issues are relatively straightforward. First, is the Castle Service Property an asset of the Debtor's bankruptcy estate under § 541 such that it is protected by the automatic stay of § 362? Second, if the Castle Service Property is subject to the automatic stay, has Zions established sufficient cause for the Court to grant to grant relief from stay under § 362(d)?

---

[17] Chapter 11 Voluntary Petition, Docket No. 1.

[18] Schedule D, Docket No. 15.

[19] *Id.*

**A.  The Castle Service Property is Subject to the Automatic Stay.**

Simply stated, Zions argues that the automatic stay does not protect the Castle Service Property because it is not titled in the Debtor's name. While this fact has relevance to the question, it is not dispositive as to whether the Castle Service Property is an asset of the estate. This is because property of the estate is an exceptionally broad concept that, when coupled with § 362, is intended to protect all property interests of a debtor in order to facilitate an orderly reorganization or liquidation in bankruptcy. Section 541 states that a bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."[20] Thus, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541."[21]

The weight of bankruptcy authority also holds that a "mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay."[22] The full extent of Debtor's interest in the Castle Service Property is established by the following facts:

> 1. The Note was signed by "Michael Hurdsman dba: Castle Service" and the SBA Note was signed by the Debtor, through its managers, for the purpose of constructing a commercial building and making other improvements on the Castle Service Property relating to the Debtor's automobile service business.

---

[20] Section 541(a)(1).

[21] *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993).

[22] *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987); *Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Corp.)*, 901 F.2d 325, 328 (3d Cir. 1990) ("a possessory interest in real property [including a tenancy at sufferance] is within the ambit of the estate in bankruptcy under Section 541, and thus the protection of the automatic stay of Section 362."). *See also In re Convenient Food Mart No. 144, Inc.*, 968 F.2d 592, 594 (6th Cir. 1992).

2. Since March of 2001, a period of more than fifteen years, the Debtor has continually possessed and operated its automotive service business out of the Castle Service Property.

3. Payments to Zions on the SBA Note have been made by the Debtor and not by the Hurdsmans individually.

4. At all relevant times, the Debtor's possession and use of the Castle Service Property has been with the full knowledge and express or implied consent of the Hurdsmans and Zions.

5. While the Hurdsmans are the titled owners of the Castle Service Property, they have only ever used it as the Debtor's business location, e.g., they have not used it as a residence or a rental property.

These facts regarding the Debtor's fifteen-year possession and use of the Castle Service Property, with the consent of the Hurdsmans and with the knowledge and implied consent of Zions, is adequate evidence for the Court to find that the Debtor holds a valid and permitted possessory interest in the Castle Service Property sufficient to include it as an asset of the estate under § 541.

This is not to say that in all instances a mere presence on real property is enough to implicate or maintain the protections of the automatic stay. For example, if a party possesses real property without the consent of the titled owner or without some other legally cognizable claim thereto, it is likely the automatic stay would not apply. Further, if a party has taken title to or possession of real property in proximity to the bankruptcy filing as part of a scheme to hinder,

delay or defraud a secured creditor, the Court would likely grant swift relief from the automatic stay.[23] As articulated below:

> [M]ere possession alone would not necessarily give rise to a property interest cognizable under § 541 of the Bankruptcy Code. In explaining the scope of § 541(a)(1)'s definition of property, Congress used the term "possessory interest," not "possession". *See* S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), 1978 U.S.C.C.A.N. 5787, 5868. A possessory interest is a "[r]ight to possess property by virtue of an interest created in the property though it need not be accompanied by title...." Black's Law Dictionary 607 (5th ed.1983). When read against the backdrop of § 541(a)(1), which refers to equitable interests, this court concludes that **a possessory interest refers to cases in which the debtor has some *right* to possess the property, for example, by virtue of the title holder's consent or permission.**[24]

Zions also argues that the automatic stay of § 362(a)(6) does not preclude it from filing a collection action against the Hurdsmans and their assets, including the Castle Service Property, based on the Hurdsmans' Personal Guarantee of the SBA Note. There is no disagreement that Zions can pursue the non-debtor Hurdsmans on the Personal Guarantee; however, its argument fails insofar as it seeks to include in its collection action a trust deed sale of the Debtor's business location.[25] This is so because, as stated above, the Castle Service Property is an asset of the bankruptcy estate; and second, because the Castle Service Property is essential to the Debtor's reorganization. If the Court were to find that the stay did not apply to the Castle Service Property, it would vitiate the very purpose of the automatic stay, which is to protect all property necessary to the Debtor's reorganization. As stated in *United States v. Whiting Pools, Inc.*:

> Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap." **The reorganization effort would have small chance of success, however, if property essential to running the**

---

[23] *See* § 362(d)(4)(A).

[24] *In re Sielaff*, 164 B.R. 560, 567 n.7 (Bankr. W.D. Mich. 1994) (emphasis added).

[25] This does not mean that all of the Hurdsmans' other assets are protected by the automatic stay, but, as explained above, only those assets that are intertwined with the Debtor and its business operations, such as the Castle Service Property.

>  **business were excluded from the estate.** *See* 6 J. Moore & L. King, Collier on Bankruptcy ¶3.05, p. 431 (14th ed. 1978). Thus, to facilitate the rehabilitation of the debtor's business, **all the debtor's property must be included in the reorganization estate.**[26]

Zions argues under *Lee v. McCardle (In re Peeples)*,[27] that foreclosing on the Castle Service Property would not violate the automatic stay because the basis for the collection action would be under the Hurdsmans' Personal Guarantee and not the SBA Note signed by the Debtor. *Peeples* involves a very different fact pattern from the current case. In *Peeples*, the judgement creditors of the debtors attempted to argue that the automatic stay protected them when they lost a state court action against a third-party whom the creditors had sued with the subjective intent of collecting on a claim against the debtors. Judge Mosier ruled that the automatic stay did not extend as far as argued by the judgment creditors because the state court action was based on a separate cause of action by a non-debtor against a third-party, and it was not based on a claim against the debtors: "even though a creditor may have a claim against the debtor, a creditor is free to pursue its claim against a non-debtor so long as there is an independent basis for the creditor to pursue that claim." Furthermore, the action sought to be stayed (an award of costs and fees against the creditors) had no impact on property of the bankruptcy estate. In this case, while Zions may have an independent basis to pursue the Hurdsmans under the Personal Guarantee, seeking to collect thereunder by conducting a trust deed sale of the Castle Service Property

---

[26] *United States v. Whiting Pools*, 462 U.S. 198, 203 (U.S. 1983). *See also* COLLIER ON BANKRUPTCY ¶ 362.03[2] (16th ed. 2016) ("In reorganization cases, the stay is particularly important in maintaining the status quo and permitting the debtor in possession or trustee to attempt to formulate a plan of reorganization. Without the stay, the debtor's assets might well be dismembered, and its business destroyed, before the debtor has an opportunity to put forward a plan for future operations. Secured creditors and judgment creditors might race to seize and sell the debtor's assets in order to obtain satisfaction of their claims, without regard to the interests of other creditors or the value of keeping assets together in an operating business. The stay prevents this piecemeal liquidation, offering the chance to maximize the value of the business.").

[27] 553 B.R. 892 (Bankr. D. Utah 2016).

would nonetheless violate § 362(a)(3) as "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

For these reasons, the Court finds that the Debtor's interest in the Castle Service Property is property of the bankruptcy estate under § 541 and is protected by the automatic stay of § 362.[28]

### B. Zions has not Established Cause for Relief from Stay under § 362(d).

In the alternative, Zions argues that even if the Castle Service Property is protected by the bankruptcy stay, cause exists to grant it relief to conduct a trust deed sale. Under § 362(d), cause includes a lack of adequate protection, a lack of equity for the debtor, and that the property is not necessary for an effective reorganization. Under § 362(g), Zions has the burden of proof as to equity in the property, with the Debtor having the burden as to all other issues.

The Court notes that Zions has not asserted a lack of adequate protection and that it did not put on evidence as to equity in the Castle Service Property. However, the value of the Castle Service Property and its associated liens, as listed in the Debtor's bankruptcy schedules, suggests an equity cushion of approximately $128,000 to cover the SBA Trust Deed. Further, as the sole facility for the Debtor's automobile service business, the Castle Service Property is *per se* necessary for an effective reorganization. Thus, the Court finds an absence of cause to grant Zions relief from stay.

Zions argues that other causes exists to terminate the stay based on allegations that the Hurdsmans are insolvent, that the Hurdsmans fraudulently transferred the Castle Service

---

[28] Zions Bank argues that a ruling that the Castle Service Property is protected by the automatic stay will cause bidders to lose confidence in the trust deed sale process due to the risk that a related entity, with a tangential or attenuated interest in real property, might stealthily file a bankruptcy petition to frustrate the sale. As explained above, the Debtor's interest in the Castle Service Property is neither tangential nor attenuated, and Zions Bank knew from the inception of the loan that Castle Service, LLC, would be conducting its automobile service business on the property. Finally, the Court's ruling does not countenance the kind of bad faith conduct described by Zions Bank.

Property to the Debtor, that the Hurdsmans continue to make fraudulent transfers to the Debtor by failing to collect fair market rent, and that the estate is accruing an ongoing administrative expense for unpaid rent to the Hurdsmans. First, no evidence was presented to support any of these allegations. Second, any fraudulent transfers may be alleviated if the Debtor has used its income to make payments on the SBA Note. Third, these arguments may be relevant if Zions pursues the Hurdsmans in state court on their guarantee, but for purposes of the present motion they do not establish cause to grant relief from stay under § 362(d).

## IV.　CONCLUSION

Bankruptcy attempts to balance the rights of creditors, especially secured creditors, against the Congressional policy of providing the debtor a "breathing space" to reorganize. The automatic stay is intended to facilitate a greater financial return to all creditors while concurrently restoring the debtor to the status of an income-producing, job-creating, and tax-paying business. In this case, the Debtor's long-term use of the Castle Service Property as its sole business location, coupled with the existence of a significant equity cushion to adequately protect the security interest of Zions, favors a denial of the motion – at least for the immediate future – to give the Debtor that opportunity to reorganize. The Bankruptcy Code grants Zions other options to protect its secured claim and to obtain the repayment of its debt, but those are not now before the Court. Therefore, the Court denies the motion of Zions for relief from stay.

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- T. Edward Cundick    tec@princeyeates.com, docket@princeyeates.com;pam@princeyeates.com
- John T. Morgan tr    john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Andres x2Diaz    courtmailrr@expresslaw.com, redrocklegalservicesecf@gmail.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).